PAUL MEANEY, ET AL, *Plaintiffs*, v. CHARLES H.
DODD, ET AL, *Respondents*, SKAGIT
COUNTY, *Petitioner*.

*Michael E. Rickert, Prosecuting Attorney,* and *John R. Moffat, Chief Civil Deputy; William C. Smart* and *Keller Rohrback,* for petitioner.

*Wm. H. Nielsen,* for respondents.

*Patrick D. Sutherland, Prosecuting Attorney for Thurston County,* and *Thomas R. Bjorgen, Deputy,* on behalf of Washington Association of Counties, Association of Prosecuting Attorneys, and Thurston County, amici curiae for petitioner.

CALLOW, J.—Skagit County challenges reversal of a summary judgment order in its favor dismissing a cross claim brought by Charles and Connie Dodd. The Dodds allege the County was negligent in issuing them a special use permit and in failing to provide accurate information during the application process. The trial court found the County breached no duty owed to the Dodds. The Court of Appeals reversed. *Meaney v. Dodd,* 47 Wn. App. 386, 735 P.2d 100 (1987). We reverse the Court of Appeals.

In February 1982 Charles Dodd applied to the Skagit County Permit Center and Planning Department for a special use permit to operate a semi–portable sawmill on his property. He asked Department employees to assist him in determining whether his application was complete and his proposal complied with county code requirements. He did not specifically request information concerning existing noise level regulations. The only reference to potential noise levels during the application process appeared on the environmental checklist completed by Dodd in which he stated:

Due to normal operation of mill proper and small machinery associated with operations, some minimum amount of increase [in noise] will be noticed.

The Skagit County Zoning Administrator checked Dodd's application against the zoning ordinance and visited the proposed site of the sawmill. He submitted staff findings to the hearing examiner which included a finding that "[w]ith operation of the sawmill there will be increased noise in the area." Neither the zoning administrator nor any other employee in the Department knew how much noise would be produced as the mill had not yet been built. On March 3, 1982, the hearing examiner granted the special use permit attaching certain conditions not relevant to this case. The County then issued Dodd a building permit and he began construction of the mill.

During the next year and a half Dodd's neighbors, the Meaneys, complained to the Planning Department on numerous occasions that Dodd was violating the conditions of the permit. As a result, the zoning administrator and other staff personnel of the Planning Department inspected Dodd's property on several occasions and two hearings were held to review the permit. Each time Dodd was found in compliance with the permit.

In the fall of 1983, the Meaneys filed a lawsuit against the Dodds and Skagit County to close the mill.[1] As a result of the Meaneys' allegations regarding noise level violations, Department officials measured the noise level of the mill and determined it exceeded the 55 dBA limit of Skagit County Code 14.04.180(4) and WAC 173–60. The County ordered Dodd to cease operations until the violation was corrected, and revised his permit to include the condition that he comply with the noise limitations in the code. Dodd conducted his own tests and determined that compliance with the code was impossible or economically unfeasible considering the design of the mill and its location with

---

[1]The Meaneys' suit against the County was dismissed on other grounds not at issue here.

respect to the Meaneys' home. The County then revoked Dodd's permit for lack of compliance with the noise limit.

The Dodds filed a cross claim in the Meaneys' suit alleging:

## VI.

That Skagit County, its agents and employees were negligent in failing to provide accurate information in response to requests by defendants Dodd concerning requirements for the installation of the saw mill.

. . .

## VIII.

That Skagit County, its agents and employees were negligent in issuing a permit that was not valid and one that could not have been valid under any conditions. That Skagit County, its agents and employees had a duty to disclose to defendants Dodd facts that made it impossible for the project to comply with Skagit County codes.

## IX.

That Skagit County, its agents and employees were negligent in issuing the building permit to defendants Dodd.

The County moved for an order of summary judgment dismissing the Dodds' cross claim. The trial court granted the motion on the grounds that the County owed no duty to Dodd under the facts of this case and that Dodd had not exhausted administrative remedies. The Court of Appeals reversed, holding that a "special relationship" had been established between Dodd and the County giving rise to a duty of due care, and remanded for trial. We granted discretionary review.

This appeal arises out of an order granting summary judgment, and therefore we are to engage in the same inquiry as the trial court, which is to consider all facts submitted as contained in the record and reasonable inferences therefrom in favor of the nonmoving party. *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). A summary judgment motion should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). *Hontz,* at 311.

 ▮  The County contends it owed no duty of care to the Dodds under the "public duty doctrine". Although the Legislature abolished sovereign immunity for municipal corporations in 1967,[2] it did not thereby create any new causes of action or liability. *J & B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 304, 669 P.2d 468, 41 A.L.R.4th 86 (1983) (*overruled on other grounds in Honcoop v. State,* 111 Wn.2d 182, 759 P.2d 1188 (1988) and *Taylor v. Stevens Cy.,* 111 Wn.2d 159, 759 P.2d 447 (1988)); *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 288, 669 P.2d 451, 39 A.L.R.4th 671 (1983). Traditionally state and municipal laws impose duties owed to the public as a whole and not to particular individuals. *Chambers–Castanes,* at 284; *Baerlein v. State,* 92 Wn.2d 229, 231, 595 P.2d 930 (1979). The public duty doctrine recognizes that a fundamental element of any negligence action is a duty owed by the defendant to the plaintiff. Thus "for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.,* a duty to all is a duty to no one).'" (Citations omitted.) *Bailey v. Forks,* 108 Wn.2d 262, 265, 737 P.2d 1257 (1987).

This court has established several exceptions to the public duty doctrine. *See Bailey,* at 268. The only exception which the Dodds contend applies in this case is the "special relationship" exception. We have found the existence of a special relationship between a government agency and a plaintiff giving rise to a particular duty of care where: (1) there is some form of privity or direct contact between the

---

[2]RCW 4.96.010 provides that municipal corporations "shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation".

governmental agency and the plaintiff which sets the latter apart from the general public, *Chambers–Castanes,* at 286; (2) specific assurances are given by the agency, resulting in a duty being undertaken by the governmental entity, *Chambers–Castanes,* at 286; and (3) the plaintiff justifiably relies on those assurances. The government then owes the plaintiff a duty of due care to ensure that the assurances given are correct.

In *Chambers–Castanes,* police dispatchers, in response to numerous telephone calls, repeatedly assured assault victims that help was on the way when, in fact, no officers were dispatched until more than an hour later. We held a special relationship arose between the plaintiffs and the police department by virtue of the express assurances and reliance thereon, giving rise to a specific duty to provide assistance as promised.

In *J & B Dev. Co.,* we noted:

> It is at the point of having focused the duty through the "special relationship" that RCW 4.96.010 should be invoked. It is at this juncture a claimant, whether suing a person or a municipality, must establish a breach of duty and resultant damages. RCW 4.96.010 employed in this way insures that the municipality's tortious conduct will be treated the same as that of a private citizen. . . . RCW 4.96.010 was not intended to create new duties where none existed before. Rather, it was to permit a cause of action in tort *if a duty could be established,* just the same as with a private person.

*J & B Dev. Co.,* at 305. However, thereafter *J & B* imposed too great a responsibility on government and too little responsibility on the citizen.

■ The burden of compliance with codes, regulations and ordinances remains the responsibility of the applicant. A builder can rely on the county division of land development for accurate information and building permits binding upon the governmental authority if the individual can show that there was a particular duty owed to him and that he could justifiably rely on assurances which he specifically sought and which the government expressly gave. *Taylor v.*

*Stevens Cy.,* 111 Wn.2d 159, 759 P.2d 447 (1988). It is only where a direct inquiry is made by an individual and incorrect information is clearly set forth by the government, the government intends that it be relied upon and it is relied upon by the individual to his detriment, that the government may be bound. *J & B Dev. Co.* is overruled to that extent.[3]

Here, the application materials submitted by Dodd indicated only that the sawmill would create a minimal increase in noise. The County was entitled to rely on Dodd's representation. A governmental authority is entitled to rely upon the statements made by a permit applicant and has no duty to verify them. It is undisputed that at no time prior to issuance of the special use or building permits did the Dodds inform the County of the specific noise level at which the sawmill would operate. Nor did the Dodds seek an express assurance of compliance from the County and the County, in response thereto, unequivocally give such a promise. Either, the Dodds themselves had not investigated the noise characteristics of the mill or they answered the application interrogatory without actual knowledge of the level of noise that would be generated. Under these facts the Dodds could not rely on the permit as an assurance that the proposed sawmill, once in operation would comply with the noise regulations.

The Dodds further allege that the County is liable for misrepresentations regarding the sawmill's compliance with county codes made to Mr. Dodd by Department employees at the time he submitted his application. The Dodds also assert the County had a duty to at least warn them of the noise limits in the code. In support of their argument, the Dodds cite *Rogers v. Toppenish,* 23 Wn. App. 554, 596 P.2d 1096, *review denied,* 92 Wn.2d 1030 (1979). In *Rogers,* a property buyer inquired whether certain property was zoned for an apartment house. The zoning administrator erroneously told him it was. The plaintiff purchased the

---

[3]All Court of Appeals cases relying on *J & B Dev. Co.* are likewise overruled.

property in reliance on that assurance. The court held the city had a duty to accurately respond to the plaintiff's inquiry.

Plaintiffs contend Mr. Kramer had a duty as the administrator of the zoning ordinances to inform accurately an individual member of the public of the zoning classification concerning specific real property once the inquiry and its purpose were made known to him. We find such a duty owed to an individual member of the public.

*Rogers*, at 558.

■ Here, there is no evidence that Dodd made any specific inquiry or received false information about existing noise regulations. Dodd's affidavit states that he asked and was told that his sawmill proposal complied with all applicable codes. At that time, the sawmill, as per Dodd's application, did comply. There was no misrepresentation by County employees. Nor does the County have an affirmative duty to warn applicants of all regulations which may affect the future use of their property, absent a specific inquiry and a duty expressly undertaken. We conclude the County did not give any express assurance that the sawmill would comply with noise regulations upon which the Dodds could justifiably rely. No special relationship was established giving rise to an actionable duty.

In light of our decision, we need not address the issues of immunity and exhaustion of remedies raised by the County. The Court of Appeals is reversed and the trial court's entry of a summary judgment and dismissal of respondents' cross claim is affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.